O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA CACAU, | ) | Case No. EDCV 08-00034-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

     Plaintiff Maria Cacau seeks judicial review of the Commissioner's denial of her application for Supplemental Security Income benefits ("SSI") under the Social Security Act. For the reasons stated below, this case is remanded for further proceedings consistent with this opinion.

**I.   Facts and Procedural History**

     Plaintiff was born on December 12, 1952, and she has an eighth-grade education. (Administrative Record ("AR") 412, 501.) Plaintiff has no relevant work history with the meaning of 20 C.F.R. § 416.965. (AR 429.)

1    Plaintiff filed an application for SSI benefits on October 5, 1999,

2  alleging a disability onset date of March 1, 1997, due to a number of

3  different impairments. (AR 22; Joint Stip. 2.) The Commissioner denied

4  Plaintiff's application initially and on reconsideration. After

5  Plaintiff's timely request, Administrative Law Judge ("ALJ") F. Keith

6  Varni held a hearing on June 21, 2001, at which Plaintiff testified and

7  was represented by counsel. (AR 10.) On July 24, 2001, the ALJ

8  determined that Plaintiff was not disabled under the Social Security

9  Act, applying the five-step sequential analysis mandated by the Social

10 Security Regulations in reaching his decision.[1] (AR 10-15.) The Appeals

11 Council denied Plaintiff's request for review on January 10, 2002, (AR

12 4), and Plaintiff filed an action for judicial review in this Court on

13 February 19, 2002. *Cacau v. Barnhart*, Case No. EDCV 02-102-MLG.

14   On January 25, 2002, Plaintiff filed a second application for SSI

15 benefits. The Commissioner found Plaintiff to be disabled as of that

16 date and began paying benefits accordingly. (AR 422.) In the meantime,

17 Plaintiff continued to pursue her initial application, seeking SSI

18 benefits for the period between 1999 to 2002. Upon the parties'

19 stipulation, this Court remanded the case to the Commissioner for

20 further administrative proceedings on June 8, 2004. (AR 245-48.)

21   Plaintiff appeared for a second hearing before ALJ Varni on July

22 24, 2004. (AR 409.) On May 24, 2006, the ALJ issued a decision again

23

24      [1] The five-step inquiry is as follows: (1) whether the claimant is
25 engaged in substantial gainful activity; (2) whether the claimant's
   impairment is "severe"; (3) whether the impairment meets or equals one
26 of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether
   the claimant is able to return to past relevant work; and (5) whether
27 the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4).
   These steps are cumulative, meaning that the ALJ need not consider
28 further steps after finding that a step does not favor the claimant.

1  concluding that Plaintiff was not disabled during the relevant time
2  period. (AR 237-44.) Plaintiff filed a new lawsuit in this Court on
3  August 8, 2006. *Cacau v. Barnhart*, No. EDCV 06-823 MLG (C.D. Cal.). Once
4  again, the parties stipulated that the case should be remanded for
5  further proceedings, which the Court ordered on February 16, 2007. (AR
6  437-38.)

7     A third hearing was held before ALJ John W. Belcher on August 28,
8  2007, at which Plaintiff, two medical experts, and a vocational expert
9  testified. (AR 422.) The ALJ determined that Plaintiff had not engaged
10 in substantial gainful activity during the relevant time period, and
11 that she had several severe impairments, including mixed connective
12 tissue disease, mild anemia, hypertension, urinary incontinence,
13 gastroesophageal reflux disease, and anxiety disorder, not otherwise
14 specified. (AR 424.) After concluding that Plaintiff's impairments did
15 not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart
16 P, Appendix 1, the ALJ determined that Plaintiff had retained the
17 residual functional capacity ("RFC")[2] to perform light work between
18 Octobr 5, 1997 and January 25, 2002, with the following limitations: she
19 could sit for four hours out of an eight-hour day; finger and handle
20 frequently but not constantly; and stoop crouch, kneel, crawl, balance,
21 and climb stairs occasionally but not frequently, with no climbing

25
26    [2] A claimant's RFC is what he or she is capable of doing despite physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment
27 of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."
28 SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

3

1   stairs,[3] ladders, or scaffolds, no walking on uneven terrain, no using

2   vibrating tools, and no exposure to hazards such as unprotected heights.

3   (AR 425.) Additionally, the ALJ determined that Plaintiff needed to work

4   in an air-conditioned environment, and that she could perform "at least

5   basic mental work-related activities involving no safety operations on

6   a sustained full time basis with customary breaks." (AR 425-26.)

7       After noting that Plaintiff had no past relevant work as

8   contemplated by the regulations, the ALJ determined that, prior to

9   January 25, 2002, Plaintiff could have worked as an electronics

10  assembler, hand packer, or packing machine operator. (AR 429.) The ALJ

11  concluded that Plaintiff was not disabled between October 5, 1999, and

12  January 25, 2002. (AR 430.)

13      Plaintiff filed the present action on January 17, 2008, alleging

14  that the ALJ erred as follows: (1) that the ALJ failed to consider a

15  consulting psychiatrist's opinion in reaching the disability

16  determination; (2) that the ALJ failed to consider a state agency

17  physician's opinion; (3) that the ALJ posed an incomplete hypothetical

18  to the vocational expert at the hearing; (4) that the ALJ did not

19  establish that Plaintiff could perform the jobs of electronics

20  assembler, hand packer, or packing machine operator; and (5) that the

21  ALJ improperly discounted Plaintiff's credibility. (Joint Stip. 3.)

22  Plaintiff asks this Court to order an award of benefits, or, in the

23  alternative, to remand the case for a new administrative hearing. (Joint

24  Stip. 24.)

25

26  _____

27  [3]   The ALJ offered two conflicting assessments of Plaintiff's
    ability to climb stairs in this RFC – that she should could climb stairs
28  occasionally, and that she never climb stairs. This conflict is not
    materials to this Court's decision.

**II.   Standard of Review**

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. The ALJ Failed to Address Relevant Medical Opinions in Assigning Plaintiff's Residual Functional Capacity**

On April 7, 2000, consulting psychiatrist Linda Smith, M.D., completed a psychiatric evaluation of Plaintiff for the Social Security Administration. (AR 109-13.) Dr. Smith diagnosed Plaintiff with panic disorder and opined that Plaintiff would have the following functional limitations:

(1)   mild impairment in her ability to understand, remember, or complete simple commands;

(2)   moderate impairment in her ability to understand, remember, or

5

1          complete complex commands;

2     (3)  mild impairment in her ability to interact appropriately with

3          supervisors, coworkers, and the public;

4     (4)  moderate impairment in her ability to comply with job rules

5          such as safety and attendance;

6     (5)  moderate impairment in her ability to respond to changes in

7          the normal workplace setting; and

8     (6)  moderate impairment in her ability to maintain persistence and

9          pace in a normal workplace setting. (AR 113.)

10    In addition, a non-examining state agency psychiatrist, K.L.

11 Immerman, M.D., completed a mental residual functional capacity

12 assessment of Plaintiff on July 27, 2000. (AR 162-65.) Dr. Immerman

13 opined that Plaintiff was moderately limited in her ability to

14 understand, remember, and carry out detailed instructions, to work in

15 coordination with or proximity to others without being distracted by

16 them, to interact appropriately with the general public, and to set

17 realistic goals or make plans independently of others. (AR 162-63.) Dr.

18 Immerman ultimately concluded that Plaintiff could perform nonpublic,

19 simple, and repetitive tasks. (AR 165.)

20    At the August 28, 2007, hearing, a non-examining psychologist,

21 Joseph Malancharuvil, Ph.D., testified as a medical expert. (AR 505.)

22 Dr. Malancharuvil disagreed with Dr. Smith's panic disorder diagnosis,

23 testifying that Plaintiff instead suffered from an anxiety disorder, not

24 otherwise specified. (AR 507-08.) Dr. Malancharuvil explained his

25 reasons for disagreeing with Dr. Smith during the hearing, and opined

26 that Plaintiff's mental limitations only precluded her from "safety

27 operation on hazardous machinery." (AR 509-10.)

28    In his decision, the ALJ relied heavily on Dr. Malancharuvil's

1  testimony, with little to no reference to either Dr. Smith's or Dr.
2  Immerman's reports. He concluded that Plaintiff's severe mental
3  impairment was an anxiety disorder, not otherwise specified, as Dr.
4  Malancharuvil diagnosed, rather than panic disorder as Dr. Smith
5  diagnosed. (AR 424.) In assessing Plaintiff's credibility, the ALJ noted
6  that Plaintiff had not sought significant treatment for mental illness,
7  which suggested to him that "her mental problems if present have been at
8  most mild." (AR 428.) Though he questioned the severity of her mental
9  impairment, the ALJ indicated that he deferred to the findings of Dr.
10  Malancharuvil and "the consultative psychiatric examiner of record,"
11  which presumably would be Dr. Smith. (*Id.*) This was the only statement
12  the ALJ made in his decision that even arguably references the
13  psychiatric reports, and the RFC assessment he reached did not
14  incorporate the limitations those reports suggested.
15      The ALJ posed the following hypothetical to the vocational expert
16  at the hearing:
17      Okay, I want you to assume an individual who at all times
18      during the relevant period was [a] younger individual who has
19      a limited education and no experience in the work place. This
20      person would be limited to lifting no more than 20 pounds
21      occasionally, less than 10 pounds frequently with pushing and
22      pulling limitations consistent with the lifting and carrying
23      limitations. This person could stand or walk for four hours
24      out of an eight-hour day and sit for six hours out of an
25      eight-hour day provided that they did not have to climb
26      ladders, ropes or scaffolding or walk on uneven ground.
27      However, they could occasionally climb stairs, balance, bend
28      or stoop, kneel, crouch or crawl. The person should avoid any

1          concentrated exposure to extreme heat or cold, should not work

2          with laboratory tools, should not work around [inaudible] or

3          fast-paced machinery or at unprotected heights. The individual

4          would also not be allowed to perform safety operations.

5  (AR 515-16.) The vocational expert testified that a person with such

6  limitations could work as an electronics assembler, hand packer, and

7  packing machine operator.

8          It is the ALJ's responsibility to resolve conflicts and ambiguities

9  in the medical record and to determine credibility. *Meanel v. Apfel*, 172

10  F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039

11  (9th Cir. 1989). The ALJ determines which medical opinions should be

12  given the most weight. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

13  1996). Moreover, the ALJ need not accept the opinion of any medical

14  source, including a treating medical source, "if that opinion is brief,

15  conclusory, and inadequately supported by clinical findings." *Bayliss v.*

16  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278

17  F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d

18  1144, 1149 (9th Cir. 2001).

19          In this case, the ALJ simply adopted Dr. Malancharuvil's opinion

20  without in any way addressing the limitations suggested by two other

21  psychiatrists. Whether the limitations presented in the consultative

22  reports would preclude Plaintiff from all work is a question that this

23  Court cannot answer, and which should have been presented to the

24  vocational expert at the hearing.

25          It is unclear why the ALJ did not specifically discuss these

26  opinions, either by rejecting them outright or by explaining how they

27  fit within his RFC determination. While the ALJ is not bound by these

28  non-treating psychiatrists' assessments, he may not ignore their

8

1  opinions. 20 C.F.R. § 404.1527(f); SSR 96-6p, 1996 WL 374180, at *1

2  (S.S.A. July 2, 1996). His failure to acknowledge the these reports

3  suggesting additional mental limitations while reaching an RFC

4  assessment and disability determination that does not include them is

5  error.

6      Because the ALJ failed to explain his reasoning for rejecting Dr.

7  Smith's and Dr. Immerman's reports in reaching Plaintiff's RFC, or,

8  alternatively, why the RFC determination does not conflict with those

9  reports, the case must be remanded. The Court need not address

10  Plaintiff's other assignments of error.

11

12  **IV.  Conclusion**

13      For the reasons stated above, it is **ORDERED** that the case be

14  remanded to the Commissioner for proceedings consistent with this

15  opinion.

16

17  DATED: October 9, 2008

18

19

20  _____

21  MARC L. GOLDMAN
   United States Magistrate Judge

22

23

24

25

26

27

28